People v King (2022 NY Slip Op 03606)

People v King

2022 NY Slip Op 03606

Decided on June 3, 2022

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on June 3, 2022
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: SMITH, J.P., CENTRA, PERADOTTO, LINDLEY, AND WINSLOW, JJ.

248 KA 19-00965

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
ALVIN KING, DEFENDANT-APPELLANT. 

KAMAN BERLOVE MARAFIOTI JACOBSTEIN & GOLDMAN, LLP, ROCHESTER (GARY MULDOON OF COUNSEL), FOR DEFENDANT-APPELLANT.
SANDRA DOORLEY, DISTRICT ATTORNEY, ROCHESTER (MARTIN P. MCCARTHY, II, OF COUNSEL), FOR RESPONDENT. 

 Appeal from a judgment of the Supreme Court, Monroe County (Charles A. Schiano, Jr., J.), rendered February 4, 2019. The judgment convicted defendant upon a jury verdict of criminal possession of a weapon in the second degree. 
It is hereby ORDERED that the judgment so appealed from is reversed on the law, the indictment is dismissed and the matter is remitted to Supreme Court, Monroe County, for proceedings pursuant to CPL 470.45.
Memorandum: On appeal from a judgment convicting him upon a jury verdict of criminal possession of a weapon in the second degree (Penal Law § 265.03 [3]), arising from the discovery of a loaded handgun in the drop ceiling of a living room in which defendant was present as a guest, defendant contends that the evidence is legally insufficient to support the conviction. We agree, and we therefore reverse the judgment and dismiss the indictment.
As relevant here, a person is guilty of criminal possession of a weapon in the second degree when that person knowingly possesses any loaded firearm and possession did not take place in that person's home or place of business (see Penal Law § 265.03 [3]; CJI2d[NY] Penal Law § 265.03 [3]). A person "may be found to possess a firearm through actual, physical possession or through constructive possession" (People v McCoy, 169 AD3d 1260, 1262 [3d Dept 2019], lv denied 33 NY3d 1033 [2019]; see Penal Law § 10.00 [8]). To establish constructive possession, "the People must show that [such person] exercised 'dominion or control' over the [firearm] by a sufficient level of control over the area in which the [firearm] is found or over the person from whom the [firearm] is seized" (People v Manini, 79 NY2d 561, 573 [1992]; see CJI2d[NY] Constructive Possession).
Here, viewing the evidence in the light most favorable to the People (see People v Diaz, 15 NY3d 764, 765 [2010]), we agree with defendant that the evidence is legally insufficient to establish that he constructively possessed the firearm. A defendant's mere presence in the house where the weapon is found is insufficient to establish constructive possession, and it is undisputed here that defendant had no connection to the apartment other than being there for a brief period of time for the purpose of gambling (see People v Rolldan, 175 AD3d 1811, 1813 [4th Dept 2019], lv denied 34 NY3d 1081 [2019]). Further, the People failed to establish that defendant "exercised dominion or control over the [handgun] by a sufficient level of control over the area in which [it was] found" (People v Burns, 17 AD3d 709, 710 [3d Dept 2005] [internal quotation marks omitted]).
Contrary to the People's contention, defendant's contemporaneous text messages did not evince defendant's consciousness of guilt and, in any event, "mere knowledge of the presence of the handgun would not establish constructive possession" (People v Hunt, 185 AD3d 1531, 1533 [4th Dept 2020]; see People v Mattison, 41 AD3d 1224, 1225 [4th Dept 2007], lv denied 9 NY3d [*2]924 [2007]; Burns, 17 AD3d at 711]; see generally People v Rivera, 82 NY2d 695, 697 [1993]). Further, although evidence that defendant's DNA profile matched that of the major contributor to DNA found on the handgun and that other individuals in the apartment were excluded as contributors thereto would support an inference that defendant physically possessed the gun at some point in time (see Hunt, 185 AD3d at 1532-1533), we conclude that it was not sufficient to support an inference that defendant had constructive possession of the weapon at the time that it was discovered (cf. People v Crowley, 188 AD3d 1665, 1666 [4th Dept 2020], lv denied 36 NY3d 1056 [2021]).
In light of our determination, we do not address defendant's remaining contentions.
All concur except Lindley, J., who dissents and votes to affirm in the following memorandum: I respectfully dissent. Viewing the evidence in the light most favorable to the People, as we must (see People v Contes, 60 NY2d 620, 621 [1983]), I conclude that the evidence is legally sufficient to support the conviction of criminal possession of a weapon in the second degree (see Penal Law § 265.03 [3]; see generally People v Bleakley, 69 NY2d 490, 495 [1987]). Further, viewing the evidence in light of the elements of the offense as charged to the jury (see People v Danielson, 9 NY3d 342, 349 [2007]), I conclude that the verdict is not against the weight of the evidence (see generally Bleakley, 69 NY2d at 495).
The record establishes that defendant was one of several people in a room where the weapon was found in the drop ceiling directly above the table at which defendant and others had been playing cards. Of all the people located in the residence that night, only defendant had DNA matching a DNA profile on the weapon. In addition, within moments of the time that police officers located the weapon, defendant texted another person and stated that he was "going to jail" and that his text messages from that night should be deleted.
To meet their burden of proving defendant's constructive possession of the weapon, the People were required to establish that defendant exercised dominion or control over the weapon by a sufficient level of control over the area in which it was found (see People v Manini, 79 NY2d 561, 573-574 [1992]; People v McIver, 107 AD3d 1591, 1592 [4th Dept 2013], lv denied 22 NY3d 997 [2013]). Although "[a] defendant's mere presence in the house where the weapon is found is insufficient to establish constructive possession" (People v Rolldan, 175 AD3d 1811, 1813 [4th Dept 2019], lv denied 34 NY3d 1081 [2019]; see People v Diallo, 137 AD3d 1681, 1682 [4th Dept 2016]), I conclude that "the evidence in this case 'went beyond defendant's mere presence in the [room in the] residence . . . and established' a particular set of circumstances from which a jury could infer possession" (People v Boyd, 145 AD3d 1481, 1482 [4th Dept 2016], lv denied 29 NY3d 947 [2017]; see People v Bundy, 90 NY2d 918, 920 [1997]; cf. Rolldan, 175 AD3d at 1813).
The People established that the likelihood of a randomly-selected individual other than defendant matching the major component of the DNA profile taken from the weapon was less than one in 52.9 octillion. All other individuals present in the room on the night the weapon was seized were excluded as sources of the major component of the DNA profile taken from the weapon. Although the fact that a defendant's DNA is found on a weapon is merely evidence that the defendant possessed the weapon "at some point in time" (People v Crowley, 188 AD3d 1665, 1666 [4th Dept 2020], lv denied 36 NY3d 1056 [2021]), the People's evidence raised a reasonable inference that the possession took place that night. Defendant was found within feet of the weapon on the same date and at the same time it was located in the ceiling tiles directly above where defendant had been playing cards (see People v Barnes, 197 AD3d 977, 978 [4th Dept 2021], lv denied 37 NY3d 1058 [2021]; People v Long, 100 AD3d 1343, 1344 [4th Dept 2012], lv denied 20 NY3d 1063 [2013]), and there is no requirement that the People establish that the defendant "had 'exclusive access' to the area" in which the weapon was located (Boyd, 145 AD3d at 1482).
Finally, although defendant did not directly admit possession of the gun to the recipient of his text messages, the timing and content of those messages evince a consciousness of guilt (see People v Jefferson, 125 AD3d 1463, 1463 [4th Dept 2015], lv denied 25 NY3d 990 [2015]). Aside from the seizure of the gun, there was no evidence at trial of any other reason for defendant to fear that he could be going to jail.
Overall, viewing the "total picture" of the evidence (People v Easley, 42 NY2d 50, 57 [1977]) in the light most favorable to the People (see Contes, 60 NY2d at 621), I conclude that there is a valid line of reasoning and permissible inferences from which a rational jury could have found the elements of the crime proved beyond a reasonable doubt (see generally Danielson, 9 NY3d at 349) and that the verdict is not against the weight of the evidence (see generally Bleakley, 69 NY2d at 495). Inasmuch as I conclude that defendant's remaining contentions do not warrant modification or reversal of the judgment, I would affirm the judgment.
Entered: June 3, 2022
Ann Dillon Flynn
Clerk of the Court